## Case No. 6,875.

### HUMPHRY v. HARTFORD FIRE INS. CO.

[15 Blatchf. 504; 9 Ins. Law J. 265; 9 Reporter, 106.] [1]

Circuit Court, N. D. New York. Jan. 29, 1879.

INSURANCE — PAROL CONTRACT—EVIDENCE—MERGER—EXTENT OF RECOVERY—BREACH OF CONDITIONS—AUTHORITY OF AGENT.

1. A contract of insurance can be made by parol, unless prohibited by statute or other positive regulation, and, on proof of such a contract, the insured can recover at law the same damages as if he were suing on a policy issued in the form in which it was agreed to be issued.

[Cited in Bailey v. American Cent. Ins. Co., 13 Fed. 254.]

2. In the present case, it was *held* that such a parol contract was proved.

3. Such a parol contract cannot be held to have been merged in a policy issued, which did not conform to such contract.

4. When a contract of insurance is made with a mortgagor for the insurance of his interest, the mortgagee can recover only where the mortgagor could have done so, had the money been payable to himself, instead of being payable, for his benefit, to the mortgagee, and cannot recover where the mortgagor has committed a breach of the conditions of the policy.

5. But, where the contract is with A., to insure his interest, no alienation by another person of the property in respect of which the in-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 9 Ins. Law J. 265, and 9 Reporter, 106, contain only partial reports.]

surance is effected can affect or prejudice the rights of A.

6. Where the agent of an insurance company knows, at the time insurance on a mill is effected, that it is not being operated as a mill, its continuance in that state is not a breach of a condition that the policy shall be void if the mill shall cease to be operated as a mill.

7. An unrestricted authority to negotiate a contract of insurance, by issuing a policy, includes authority to make a valid preliminary contract for such issue.

[Cited in Commercial Union Assur. Co. v. State, 113 Ind. 338, 15 N. E. 518.]

[This was a suit by Walter H. Humphry against the Hartford Fire Insurance Company on a policy of insurance. The suit was brought in the supreme court of the state of New York, and was removed to the United States circuit court at the request of both parties. On the first trial a verdict was rendered for the defendant, but on motion of the plaintiff a new trial was granted. Case No. 6,874. The case is now heard on the new trial, on the evidence and law, by the court, both parties having waived a trial by a jury.]

A. M. Bingham, for plaintiff.
William F. Cogswell, for defendant.

BLATCHFORD, Circuit Judge. This case was removed into this court, by the defendant, from the supreme court of New York, and, under a written stipulation by both parties waiving a jury, has been tried before the court, without a jury. The complaint contains two separate causes of action. The first count sets forth, that the business of the defendant, a Connecticut corporation, in insuring against loss or damage by fire, was carried on at Mount Morris, Livingston county, New York, through Bingham, Brothers & Brace, a copartnership firm, who were the general agents of the defendant for Mount Morris and its vicinity, and were authorized to enter into contracts of insurance, and to issue policies of insurance, for, and in the name of the defendant; that, on or about November 1st, 1874, the plaintiff was the owner of a certain mortgage on a mill, for about $1,000, and was personally liable to pay two other mortgage liens on the same property, held by other parties, amounting, in all, to over $4,000; that, on or about said day, the defendant, through said agents, in consideration of $78 75, which was at the time, or soon thereafter, paid, agreed with him to issue to him its policy of insurance against loss or damage by fire, upon said mill and machinery therein, in such appropriate terms as to insure him against loss or damage by fire to the amount of $1,500, upon said mill and machinery, for the term of one year, both on account of said mortgage lien, and on account of the personal liability of the plaintiff for the payment of the said mortgage liens held by other parties; that, on or about the 4th of November, 1874, the defendant, in partial fulfilment of said agreement, issued its policy of insurance, dated on that day, whereby, in consideration of the payment to it of $78 75, it insured Wm. M. Calvert, against loss or damage by fire, for the amount of $1,500, for the term of one year, on his flouring and grist mill, known as the "Farmers' Mill," in Mount Morris, and on fixed machinery, including shafting and belting, therein, one half of the said sum on each, the loss, if any, to be payable to Walter H. Humphry, as mortgagee of the premises; that, by said policy, the defendant promised and agreed to insure said Calvert against all such loss or damage as might accrue to the property specified, by reason of fire, from November 4th, 1874, at noon, to November 4th, 1875, at noon, and to pay the amount of such loss to Walter H. Humphry, as mortgagee of such premises, within sixty days after due notice and satisfactory proof of such loss; that the policy so issued by the defendant was not delivered to the plaintiff, but was held by the said agents in trust for the plaintiff, until after the 13th of March, 1875; that the property so insured was totally destroyed by fire, without the fault of the plaintiff, on the 13th of March, 1875; that, immediately thereafter, the plaintiff furnished to the defendant due notice and proof of the destruction of said property by fire, and otherwise fully performed all the conditions of said policy of insurance on his part, and, at and from the time of the making of such agreement to insure, and of the issuing of such policy of insurance, to the commencement of this action, the plaintiff has had an interest in said property, as a mortgagee thereof, and also on account of the sums of money secured to be paid by mortgages held by other parties upon said property, and for the payment of which the plaintiff was, and still is, personally liable, to more than the amount of $4,000; that the policy so issued was not in accordance with the agreement of said parties, so made, to insure the plaintiff, as above set forth, in that said policy did not, by its terms, insure the plaintiff against loss or damage by fire on account both of his interest in said premises as a mortgagee thereof, and on account of his personal liability for the payment of other mortgages which constituted a lien on said premises, and were held and owned by other parties; that the said policy so issued contained, among other things, certain conditions, as follows: "If any change takes place in the title or possession of the property, whether by sale, transfer or conveyance, legal process or judicial decree, * * * or, if the property insured be a mill or manufactory, shall cease to be operated and so remain for a period of more than fifteen days, without notice to the company and consent endorsed hereon, * * * in every such case this policy shall be void;" that such conditions were not in accordance with the said agreement of the defendant to insure the plaintiff against loss from fire to

said property on account of the interest which the plaintiff held therein, as above set forth, but were unreasonable and burthensome, and beyond the power or ability of the plaintiff to control or in any way prevent the occurrence of; that the legal title to said property, at the time of the making of said agreement, was in one William M. Calvert, who had the control of the same and the power to convey said property; that the premises described in said policy are the same that the defendant so agreed to insure; that the plaintiff had no knowledge that said policy did not conform to the terms of such agreement so made to insure the plaintiff, in all respects, until after said property was so destroyed by fire; that more than sixty days have elapsed since the plaintiff furnished due proof of the loss and destruction of said property by fire, and no part of the said sum of $1,500 has been paid by the defendant; and that, by reason of the failure of the defendant to fulfil said contract, the plaintiff has sustained damage in the sum of $1,500, and interest thereon from July 5th, 1875, which amount is due the plaintiff, with said interest thereon.

The second count sets forth, that the defendant, on or about the 4th of November, 1874, in consideration of the payment to it of $78 75 by Walter H. Humphry, at the time of issuing its policy of insurance, executed to William M. Calvert a policy of insurance against loss or damage by fire, for the amount of $1,500, for the term of one year, on his flouring and grist mill known as the "Farmers' Mill," in Mount Morris, and on fixed machinery, including shafting and belting, therein, one-half of the said sum on each, the loss, if any, to be payable to Walter H. Humphry, as mortgagee of the premises, by which policy of insurance the defendant promised and agreed to insure the said Calvert against all such loss or damage as might accrue to the property specified, by reason of fire, from November 4th, 1874, at noon, to November 4th, 1875, at noon, and to pay the amount of such loss to Walter H. Humphry, as mortgagee of such premises, within sixty days after due notice and satisfactory proofs of such loss; that the property so insured was totally destroyed by fire, without the fault of the plaintiff, on the 13th of March, 1875; that, on or about the 6th of May, 1875, the plaintiff furnished to the defendant due notice and proofs of the destruction of said property by fire, and otherwise fully performed all the conditions of said policy of insurance, and, at and from the time of the execution of such policy to the commencement of this action, the plaintiff has had an interest in said property, as a mortgagee thereof, and also on account of mortgages held by third parties thereon, for the payment of which the plaintiff was personally liable, to more than the amount of $4,000; that more than sixty days have elapsed since the plaintiff furnished due

proof of the loss and destruction of the said property by fire, and no part of said sum of $1,500 has been paid by the defendant; and that the plaintiff demands judgment for $1,500 and interest thereon from July 5th, 1875.

The answer admits that the business of the defendant was carried on at Mount Morris by the firm of Bingham, Brothers & Brace, but denies that that firm were its general agents, and alleges that they were its local agents. It avers, that, on or about November 4th, 1873, its policy of insurance was issued to the plaintiff, as owner of the property therein described; and that, subsequent to that date, the plaintiff had conveyed the title of the property to William M. Calvert. It denies that on or about November 4th, 1874, the defendant agreed to insure the plaintiff against loss or damage by fire to certain property, as the owner of a mortgage thereon, except as thereinafter stated. It denies that the defendant ever agreed to, or did, insure the plaintiff against loss or damage by fire to said property, as being liable personally for the payment of liens upon said property. It avers that the defendant has no knowledge or information sufficient to form a belief as to whether the plaintiff paid to the defendant the sum of $78 75, as alleged, but avers that such payment was made to it by said Calvert. It admits that on or about November 4th, 1874, the defendant issued its policy of insurance to William M. Calvert, loss, if any, payable to Walter H. Humphry, as mortgagee of the property therein described, upon the terms and conditions alleged in the complaint, and that said property was destroyed by fire on the 13th of March, 1875. It denies that the plaintiff furnished to the defendant due notice and proof of the destruction of said property by fire, or that he has fully performed the conditions on his part required to be performed. It admits that the plaintiff had an interest in the property so insured, as mortgagee, but denies that he had any interest therein on account of mortgages held by third parties for which he was liable, and avers that in no event is the defendant liable to the plaintiff for such liability. It denies that the policy issued by it November 4th, 1874, was not in accordance with the agreement of the parties, and alleges that such policy was issued by the defendant, and accepted by said Calvert, in exact accordance with the agreement of the parties. It denies that sixty days have elapsed since the plaintiff furnished due proofs of loss and of the destruction of said premises by fire, but it admits that no part of said $1,500 has been paid by the defendant. For a second and separate defence, it says that it was provided in and by the terms of said policy, that, in case any change took place in the title or possession of the property, whether by sale, transfer or conveyance, legal process or judicial decree, without the consent of the defendant, endorsed thereon, then such policy should be void;

that a change did take place, in the title of the property, in that said William M. Calvert did, on or about the 1st of January, 1875, convey by deed the said property unto one Reynolds, and that such change was made without the consent of the defendant endorsed thereon; and that thereby said policy became and is void. For a third and separate defence, it avers that it was provided in and by the terms of said policy, that, if the property insured was a mill or manufactory, and should cease to be operated, and should so remain, for a period of more than fifteen days, without notice to the defendant, and consent endorsed thereon, then such policy should be void; that the property so insured was a mill and did cease to be operated for a period of more than fifteen days, and no notice thereof was given to the defendant, nor was its consent thereto endorsed thereon; and that said policy thereby became and was and is void. It further avers, that the assured has never furnished to the defendant any notice of loss, nor any account of such loss, nor in other respects complied with the conditions of said policy, nor has any one furnished such notice and account of such loss as was required by the terms of said policy. For a fifth and separate answer it says, that it was provided by said policy, that, in no case should the assured be entitled to recover of the defendant any greater proportion of the loss or damage than the amount thereby insured bore to the whole sum insured on said property, whether such insurance was by specific or by general or floating policies, and without reference to the solvency or the liability of other insurers; that at the time of said fire there was other insurance upon the property covered by the policy of the defendant, to the amount of $1,500, in the Atlas Insurance Company of Hartford; that the interest of the plaintiff in the building so insured did not exceed the sum of $600; and that the defendant, if liable at all, is liable only for its proportion of the plaintiff's loss, to wit, $300.

That a contract of insurance can be made by parol, unless prohibited by statute, or other positive regulation, is well settled. Sanborn v. Fireman's Ins. Co., 16 Gray, 448; Trustees of First Baptist Church v. Brooklyn Fire Ins. Co., 19 N. Y. 305; Relief Fire Ins. Co. v. Shaw, 94 U. S. 574. It has already been held, in this suit, by this court [Case No. 6,874], that the first count of the complaint sets forth a legal cause of action; that it claims damages for the breach of the alleged parol contract to insure; and that, if a valid contract in the form set up in such first count is proved, the plaintiff can recover at law the same damages as if he were suing on a policy issued in the form in which it was agreed to be issued. Pratt v. Hudson River R. Co., 21 N. Y. 305; Tayloe v. Merchants' Fire Ins. Co., 9 How. [50 U. S.] 390. Commercial Mut. Marine Ins. Co. v. Union Mut. Ins. Co., 19 How. [60 U. S.] 318,

323; Ellis v. Albany City Fire Ins. Co., 50 N. Y. 402. In the present case, it is not shown that there is any statute or regulation which prohibits the making by the defendant, by parol, of such a contract of insurance as is set forth in the first count of the complaint. It is a question of fact as to whether the parol contract set up was made.

The plaintiff had owned the mill and machinery in question and the land on which the mill was erected. While he was such owner, and on the 4th of November, 1873, he effected an insurance on the mill and machinery, with the defendant, for one year, for $1,500, he being the person named in the policy as owner and assured. By a deed dated the 8th of January, 1874, the plaintiff and his wife conveyed to William M. Calvert the said mill, machinery and land. The deed was acknowledged by the grantors on the same day and was recorded June 24th, 1874. The deed stated that there were two mortgages on the premises, both given by the plaintiff, one held by John F. Barbour and the other by James H. McNair or daughters, both dated January 1st, 1872, and recorded on the next day, and that the grantee thereby assumed, upon said mortgages, the payment of the sum of $3,334 and interest from January 1st, 1874. The policy issued in November, 1873, was assigned to Calvert by the plaintiff. By a mortgage dated the 8th of January, 1874, Calvert mortgaged to the plaintiff the premises so conveyed to him by the plaintiff, as security for the payment of $906 75 and interest from date. Nothing has ever been paid on that mortgage. There was a clause in the mortgage, that the mortgagor should keep the buildings erected on the premises insured against loss and damage by fire, by insurers, and in an amount approved by the mortgagee, and assign the policy and certificate thereof to the mortgagee; and that, in default thereof, it should be lawful for the mortgagee to effect such insurance, as mortgagee or otherwise, and the premium or premiums paid for effecting and continuing the same should be a lien on the mortgaged premises, added to the amount secured by the mortgage, and payable on demand, with interest at 7 per cent. per annum.

The plaintiff testifies as follows, in relation to the circumstances attending the issuing of the policy of November 4th, 1874: "I was passing Bingham's place of business. He called me in and notified me that the policy of insurance for $1,500 would expire the next day at noon. He asked me what he should do with it. I told him I thought I should let it drop, as I had transferred the property. He asked me if I could afford to let that insurance drop. I told him I didn't know whether I could or not. He then asked me if I had not a considerable interest in the property yet. I told him I had. He wanted to know what my interest was. I told him I took a mortgage back from Calvert for

about $1,000, and that I was personally liable for two other mortgages, amounting to $3,300. He asked me if I knew anything about the responsibility of Mr. Calvert. I told him I did not. He then asked me if the mortgages did not have an insurance clause in them. I told him they had. He then said, 'You certainly can't afford to let that insurance run out,' as the property was good for all the money I had paid out for insurance on it. I told Mr. Bingham I would think it over and let him know before it expired. I went in the next day and told him to keep my interest in that property insured for $1,500. He asked me what I was doing with the property. I told him I was using it to store coarse grains and flour barrels. He said that was all right, if the property was in use; that the company did not like to issue insurance on property that was lying idle. He then directed the clerk to write a policy for me for $1,500. He told me what the premium was and I wrote a check for $78 75 and left the office. That was all I did about the policy till the night of the fire. I had been in the habit of leaving my policies there with them. The mill was worth $4,000; the fixed machinery, &c., $4,000. The mill had been running as a flouring mill till a month before the insurance. Bingham understood I was using it by permission of Calvert. He knew that the mill was not then running. The policy remained at the Binghams' office till after the fire. It was delivered to me the same week. Mr. C. L. Bingham handed it to me."

Charles L. Bingham, the person with whom the plaintiff had the transaction in question, testifies as follows, as to the circumstances attending the making of the insurance: "There was a policy on the property, held by William M. Calvert, as assignee of Walter H. Humphry, which, by its terms, expired November 4th, 1874, or was to expire. At or about that day, I think the day before, I called Mr. Humphry into our bank, as he was passing, and asked him if he wanted the policy renewed. He said he did not know as he did. We talked about it. I think I asked him if his interest in the property did not continue as it was before; whether he had not a mortgage on the property. He said he had. His liability on a bond accompanying a prior mortgage on the property was also spoken of. He said he would see and let me know. He came in that day, or the day after, and said he would have the policy renewed. I turned to my clerk, in his presence, and directed him to renew the policy. Mr. Humphry paid the premium and the policy was issued. I do not know where the old policy that expired November 4th, 1874, is. I do not know whether it is in existence. That policy was originally issued to W. H. Humphry. It had been assigned to William M. Calvert, by assignment dated January 16th, 1874. By the

terms of the assignment, the loss, if any, was payable to the assignor, Mr. Humphry; I can't say whether as mortgagee or not. My best impression is, that it was payable to him generally, but it may have been the other way. I don't think that policy was in my possession at the time the policy in suit was issued. It may have been. I now say, on reflection, it was not in my possession at that time. After the policy in suit was written, I can't tell, from recollection, what was done with it. I have no recollection on the subject, as to whether it was left with me or not. The property insured was a flouring and grist mill. I knew the property. I think the mill was not running at the time the fire occurred. I cannot tell for how long a period before that it had been idle. I should think it had been idle two or three months. I do not think it had been running that winter. The first policy of which I have spoken was in the defendant's company. At the time that first policy was issued I understood that Mr. Humphry was the owner of the property. It was issued to him as such. It was assigned January 16th, 1874. At the time of the assignment of this policy, I understood that the deed of the mill property was transferred to Calvert. I cannot tell, from recollection, whether the mill was in operation at any time from the date of the transfer to Calvert, up to the time of the fire. I have no recollection on the subject. There was nothing to call my attention to it. The more I think of it, the more I am impressed that it had not been running for some time, and I think it was not running at the time the policy in suit was issued. The manner of our doing business for the company at that time was this: We were furnished with policies signed by the company, and issued them without their being submitted to the company. The first policy was in the same amount as the policy in suit. My firm was doing a large insurance business, and we kept a large number of policies on file in our office, instead of the assured taking them away. At the time I issued the policy in suit, I presume I knew the condition of the property insured, and whether the mill was running or not." It was admitted, on the trial, by the defendant, that Bingham, Brothers & Brace were duly authorized to issue policies of insurance furnished to them in blank by the defendant, duly executed by the defendant, without submitting to the defendant the question as to whether the policy should be issued or not.

The policy in suit is dated November 4th, 1874, and is numbered 2,859. It contains these provisions: "The Hartford Fire Insurance Company, Hartford, Conn., by this policy of insurance, in consideration of the receipt of seventy-eight and 75/100 dollars, do insure Wm. M. Calvert, of ——, for the amount of fifteen hundred dollars, for the

term of one year, as follows, viz: $750 on his frame flouring and grist mill, known as the 'Farmers' Mill,' on Mill Race, in Mt. Morris, N. Y.; $750 on fixed machinery, including shafting and belting therein; kerosene for light; like ins. in Lycoming; loss, if any, payable to W. H. Humphry, mortgagee; $1,500, against all such immediate loss or damage sustained by the assured and his legal representatives, as may occur by fire to the property specified, not exceeding the sum insured, nor the interest of the assured in the property, except as hereinafter provided, from the 4th day of November, 1874, at 12 o'clock noon, to the 4th day of November, 1875, at 12 o'clock noon, to be paid sixty days after due notice and satisfactory proofs of the same, made by the assured, are received at the office of this company, in Hartford. * * * If any change takes place in the title or possession of the property, whether by sale, transfer or conveyance, legal process or judicial decree, or the policy is assigned without consent of the company, endorsed thereon, * * * or, if the premises hereby insured shall become vacant or unoccupied, or, if the property insured be a mill or manufactory, shall cease to be operated, and so remain for a period of more than fifteen days, without notice to the company and consent endorsed hereon, then and in every such case, this policy shall be void. * * * In case of loss, the assured shall give immediate notice thereof, and shall render to the company a particular account of said loss, under oath, stating the time, origin and circumstances of the fire, the occupancy of the building insured or containing the property insured, other insurance, if any, and copies of all policies, the whole value and ownership of the property, and the amount of loss or damage, and shall produce the certificate, under seal, of a magistrate, notary public or commissioner of deeds, nearest the place of the fire and not concerned in the loss or related to the assured, stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured, to the amount claimed by the said assured. In no case shall the claim be for a greater sum than the actual damage to, or cash value of, the property at the time of the fire, nor shall the assured be entitled to recover of the company any greater proportion of the loss or damage, than the amount hereby insured bears to the whole sum insured on said property, whether such other insurance be by specific, or by general or floating, policies, and without reference to the solvency or the liability of other insurers. Assignors, unless the assignee owns the property, must make the proofs hereby required."

It was admitted, on the trial, by the defendant, that due notice of the fire and loss was immediately given to the defendant. The only account of the loss, or proof of the loss, furnished to the defendant, was a statement signed by the plaintiff, and sworn to by him before a notary public, on the 1st of May, 1875. In that statement, it is set forth, that, on the 4th of November, 1874, the defendant, by its policy of insurance, numbered 2,859, insured Walter H. Humphry against loss or damage by fire, to the amount of $1,500; that said policy was issued in consideration of $78 75 "paid to said company by Walter H. Humphry, the holder of one mortgage against the premises insured, of $960, or about that sum, and also being liable to the payment of two other mortgages, amounting to over three thousand dollars, upon the premises insured;" and that the policy was made out as follows: "The Hartford Fire Insurance Company, Hartford, Connecticut, by this policy of insurance, do insure Wm. M. Calvert, of ——, for the consideration above set forth, for the amount of fifteen hundred dollars, for the term of one year, against loss by fire, loss, if any, payable to W. H. Humphry, mortgagee; $750 upon the flouring and grist mill known as the 'Farmers' Mill;' $750 on fixed machinery, including shafting and belting therein." The statement continues: "That the above described policy was issued in pursuance of an agreement to renew a policy issued for the benefit and for the protection of said Humphry, on the 4th day of November, 1873, upon the same property and for the same amount, while said Humphry held the title to said property, for the term of one year, from the 4th day of November, A. D. 1873, to the 4th day of November, A. D. 1874, at noon, which said policy was subsequently continued in force. by renewal, as above set forth, until the 4th day of November, A. D. 1875, at noon. That, in addition to the sum insured by said policy of said company, on said property, there was other insurance made thereon, to the amount of fifteen hundred dollars, as specified in the schedule hereto attached, in which is given the name of each company and the written portions of each policy, with endorsements, besides which there was no other insurance thereon. The whole cash value of the property so insured, at the time immediately preceding the fire, was six thousand dollars. The property insured belonged exclusively to William M. Calvert, at the time of such insurance, and at the time the same was destroyed by fire, and that said Calvert refuses to make proof of loss, on the ground that he has no interest in this policy of insurance. The building insured or containing the property destroyed or damaged was occupied in its several parts by the parties hereinafter named, and for the following purposes, to wit: By Humphry & Fraley, as a storeroom for grain and materials

used in the manufacture of flour and feed and for no other purpose whatever. * * * The value of property belonging to or in which said Humphry was so interested, and totally destroyed by fire, as hereinbefore stated, and the total insurance thereon, was as follows: On grist mill, value of property, $3,000, total insurance, $1,500; on fixed machinery, value of property, $3,000, total insurance, $1,500. * * * Total loss and damage, $6,000; total insurance, $3,000." The schedule referred to in the statement was in these words: "The Atlas Insurance Company, of Hartford, Connecticut, insure William M. Calvert to the amount of fifteen hundred dollars, payable to Walter H. Humphry, mortgage lien. Building, 'Farmers' Mill,' $750. Fixed machinery, shafting and belting, $750. Hartford Fire Insurance Company, as stated within."

Before the plaintiff signed and swore to said statement, his counsel had applied to Calvert to make proof of loss under the policy, but Calvert declined to do so. A mortgage on the premises, accompanied by his bond, was given by the plaintiff to George S. McNair, January 1st, 1872, for the payment of $2,500, with interest from that date. In June, 1873, that bond and mortgage was assigned to Ann E. McNair. The only payments ever made on that mortgage were $100, December 12th, 1873, and $75, January 15th, 1874. Another mortgage on the premises, accompanied by his bond, was given by the plaintiff to George S. McNair, January 1st, 1872, for the payment of $2,500, with interest from that date. That bond and mortgage was assigned to John F. Barbour, and the mortgage was foreclosed, and the premises were sold, and, on the 30th of June, 1875, a judgment for a deficiency was entered against the plaintiff, for $860 14, with interest from June 26th, 1875. The amount of that judgment was paid by the plaintiff after the commencement of this suit. The proofs of loss were furnished May 4th, 1875, and this suit was commenced in the state court July 19th, 1875.

A complaint, sworn to by the plaintiff on the 14th of July, 1875, was put in the suit in the state court, before the suit was removed into this court. That complaint contained but one count and one cause of action, which was a count on the policy as issued, and was in the same words as the second count in the complaint in this court, and contained no such cause of action as is set forth in the first count of the complaint in this court.

The plaintiff, being the owner of the premises on which the mill and machinery were situated, effected, in November, 1873, an insurance on such mill and machinery, for $1,500, for one year, with the defendant. No other inference can be drawn from the evidence, than that the mill and machinery were then worth as much as $6,000. In January, 1874, the plaintiff conveyed the premises to Calvert. There were, at that time, two mortgages on the premises, on which there was unpaid $3,334 and interest from that time. Those mortgages had been given by the plaintiff in January, 1872, and with them he had given his personal bonds. When he deeded the property to Calvert, Calvert gave him back a mortgage on it for $906 75, with interest. Calvert assumed the payment of the mortgages for $3,334. The plaintiff, with the assent of the defendant, assigned to Calvert the policy of insurance then running, which assignment made the loss, if any, payable to the plaintiff. This state of things substantially continued down to November, 1874. At that time, the plaintiff clearly had an insurable interest in the mill and machinery, as respected the mortgages for $3,334, inasmuch as such mill and machinery stood between him and his personal liability on the bonds accompanying such mortgages, even though Calvert had assumed the payment of the amounts of those mortgages. The plaintiff also had, in addition, an insurable interest in the mill and machinery, as respected the mortgage to him for $906 75. Calvert, also, had an insurable interest, as owner of the premises. Under this state of facts, the transaction took place between Mr. Bingham and the plaintiff. It is manifest, from the testimony of both the plaintiff and Bingham, that both parties had in view the interest of the plaintiff and the insurance of that interest, and that that interest was fully disclosed to, and known by, Bingham, at the time. Neither of them was looking to the interest of Calvert. The mortgage from Calvert and the two prior mortgages were all of them referred to in the negotiation, specifically, as constituting the insurable interest of the plaintiff. Bingham urged the insurance of such interest, knowing that it was insurable. Herkimer v. Rice, 27 N. Y. 163; Waring v. Loder, 53 N. Y. 581, 585; Rohrbach v. Germania Fire Ins. Co., 62 N. Y. 47, 60. The insurance clause in the mortgage from Calvert to the plaintiff was to the effect, that the insurance should be in an amount approved by the plaintiff, that the plaintiff might effect it, as mortgagee or otherwise, and that the premium should be secured by the mortgage. When the mortgage containing such insurance clause was executed and delivered, the parties to it must be held to have contracted with reference to the insurable interest of the plaintiff, then known to both of them to be not only the amount of such mortgage but the amount, also, of the two prior mortgages. In the negotiation between the plaintiff and Bingham, the latter, after being advised of such insurable interest of the plaintiff, referred to the fact of an insurance clause in the mortgage and to the liability of the premises for the amount of premium paid by the plaintiff. This could have been referred to for no other purpose than as an inducement to the plaintiff to insure all his insurable interest. Moreover, the then amount of insurance with the de-

fendant was $1,500, and, as the proposition of Bingham was, that the plaintiff should continue $1,500 of insurance with the defendant, while there should be $1,500 more in the Lycoming Insurance Company, and as the interest of the plaintiff, as mortgagee, under the mortgage from Calvert, was not over $1,000, it is plain, that Bingham, in accepting a premium on $1,500, must have understood that he was agreeing to insure more than the $1,000 interest, and that the insured interest was the $4,300, and that it was the plaintiff's interest, and was insured for him, and was insured, in all, for $3,000. The plaintiff testified: "I went in the next day and told him to keep my interest in that property insured for $1,500." What Bingham must have understood by the words "my interest" has been shown. Bingham testifies, that he asked the plaintiff if he wanted the existing policy "renewed;" that the plaintiff said, the next day, "he would have the policy renewed;" and that the direction Bingham gave to his clerk, in the presence of the plaintiff, was, "to renew the policy." Even if the word "renew" was used, it is plain that both parties used it in the view, that, under the then existing policy and the assignment of it, all the insurable interest of the plaintiff was covered. Bingham says, that, by the assignment, the loss, if any, was payable to the plaintiff, and that his best impression is, that it was payable to him generally. He further says: "I think I asked him if his interest in the property did not continue as it was before; whether he had not a mortgage on the property. He said he had. His liability on a bond accompanying a prior mortgage on the property was also spoken of." This shows, that Bingham regarded all the insurable interest of the plaintiff as covered under the then existing policy and its assignment, and that, if such interest continued as it was before, the new policy was to cover the same interest. Hence, the use of the word "renew," under the circumstances, can have no effect to destroy the plaintiff's claim. He paid the premium for the insurance of all his insurable interest in the mill and machinery, and was entitled to a policy to that effect. His right is not affected unfavorably by the fact that he could collect the amount of the premium from Calvert, under the terms of Calvert's mortgage. He never saw the policy that was made out, until after the fire had occurred, and had no opportunity before the fire, and before the rights of the parties had become fixed by the loss, to accept or reject it.

The proof of loss says, that the policy numbered 2,859 was issued, but it also says, that the defendant insured the plaintiff thereby, in consideration of $78 75 paid to it by him, he being the holder of one mortgage on the premises for $960, and being liable to pay two other mortgages thereon, amounting to over $3,000; that such policy was issued in pursuance of an agreement to renew a policy issued November 4th, 1873, for the benefit and for the protection of the plaintiff, on the same property, and for the same amount, while he held the title to the said property; that said policy was subsequently continued in force by renewal, "as above set forth," until November 4th, 1875; and that Calvert refuses to make proof of loss, on the ground that he has no interest in this policy of insurance. There is nothing in these portions of the proof of loss which is inconsistent with the claim made by the plaintiff in the first count of the complaint in this court. On the contrary, the substance of such claim is contained in the proof of loss, in the portions referred to.

In the proof of loss, the plaintiff states that the property belonged to Calvert at the time of the insurance, and at the time of the fire. The evidence shows that the plaintiff so believed. In point of fact, Calvert had, before the fire occurred, delivered to Thomas Reynolds a deed of the property, executed by Calvert. This deed was acknowledged January 18th, 1875, and was made in pursuance of a contract between Calvert and Reynolds for the exchange of property, but was not delivered till after the last named date. The evidence shows, at most, that the plaintiff had, before the fire, heard of the contract between Calvert and Reynolds, but there is nothing to show that the plaintiff, when he made the proof of loss, knew that any deed had passed from Calvert to Reynolds. It does not appear when he afterwards learned of the deed, or that he learned of it before he brought the suit in the state court, nor does it appear that, before he brought such suit, he learned that the deed had passed before the fire. Until he learned that the defence of a transfer of the title of the property by Calvert before the fire, would be set up as a defence, or that the foundation existed for setting up such a defence, he might well sue on the policy according to its terms. After that, and only then, it became important that he should be put in a position where the conveyance by Calvert would not affect his right to recover. There is, therefore, nothing prejudicial to the plaintiff in the fact that he applied to Calvert to make proof of loss under the policy made out, or that he made the proof himself in the form set forth, or that he brought the suit at first on such policy. The fact that the second count in the complaint in this court is on such policy, cannot affect his right to recover on the first count, in view of the averments of the first count as to such policy, and as to the contract.

The point is taken by the defendant, as to the cause of action in the first count, that the parol contract was merged in the policy. When the gravamen of the first count is, that the policy does not set forth the complete parol contract, it is a petitio principii to allege that the parol contract is merged in the policy, especially when it appears that the

plaintiff never saw or had possession of the policy until after the loss.

It must now be regarded as the settled law of the state of New York, that, when a contract of insurance is made with a mortgagor for the insurance of his interest, the mortgagee can recover only where the mortgagor could have done so, had the money been payable to himself, instead of being payable, for his benefit, to the mortgagee, and cannot recover where the mortgagor has committed a breach of the conditions of the policy. Grosvenor v. Atlantic Fire Ins. Co., 17 N. Y. 391; Buffalo Steam Engine Works v. Sun Mut. Ins. Co., Id. 401. This is in accordance with the views of the supreme court of the United States, in Carpenter v. Providence Wash. Ins. Co., 16 Pet. [41 U. S.] 495, 501, 502; and the contrary doctrine of the supreme court of New York, in Traders' Ins. Co. v. Robert, 9 Wend. 404, and of the court of appeals of New York, in Tillou v. Kingston Mut. Ins. Co., 1 Seld. [5 N. Y.] 405, is no longer the law in New York. Therefore, in the present case, if the contract of insurance had been made with Calvert, and the insurance had been an insurance of his interest, his breach of the condition of the policy as to alienation would have avoided the policy. But, where the contract is with A., to insure his interest, no alienation by another person of the property in respect of which the insurance is effected, can affect or prejudice the rights of A. If the policy in the present case had been made out in accordance with the terms of the actual contract, as they are now decided to have been, and if such policy had contained a clause, that it should be void if any change should take place in the title of the property without the consent of the company, endorsed on the policy, such clause would be held to mean, that the change, if by voluntary deed, must be by the deed of the assured, and not by the deed of some other person.

When the insurance was effected, Bingham was advised that the mill was being used as a place for storage, and was not being operated as a mill. He was satisfied that the place was in use. Bingham testifies that he thinks the mill was not running when the policy in suit was issued, and that he presumes he knew, when such policy was issued, the condition of the property and whether the mill was running or not. The mill did not cease to be operated as a mill after the policy was issued, because, to the knowledge of Bingham, it was not being operated as a mill when the policy was issued. Therefore, the defence on that point, set up in the answer, fails.

There is no defect in the proofs of loss. They were received and retained by the defendant, and no defect was, or is, pointed out. The admission that the agents were duly authorized to issue policies of insurance furnished to them in blank by the defendant, duly executed by the defendant, without submitting to the defendant the question as to whether the policy should be issued or not, makes it proper to apply to this case the doctrine, that an unrestricted authority to negotiate a contract of insurance by issuing a policy, includes authority to make a valid preliminary contract for such issue. Ellis v. Albany City Fire Ins. Co., 50 N. Y. 402, 407.

As the interest of the plaintiff which was insured exceeded the entire amount of the insurance made by the defendant and by the Atlas Company, the plaintiff is entitled to a judgment for $1,500, with interest from July 5th, 1875, and costs.