DELAWARE STATE FIRE AND MARINE INSURANCE
COMPANY vs. MARK SHAW.

*Question whether an Acceptance of certain Instructions granted
by the Court, made them the law of the case, where an Appeal
was taken from the Refusal of a prayer in Conflict with
said Instructions—Question whether a paper sued on con-
stituted a Valid contract of Marine insurance.*

The defendant offered five prayers, all of which, except the fifth,
were rejected. The fifth prayer was granted, and two instructions
were given by the Court. The defendant then withdrew its
second, third and fourth prayers, saying by its solicitor, that "the
instructions of the Court covered the same points, and were satis-
factory to him, but he reserved an exception to the rejection of
his first prayer." The first prayer denied the right of the plaintiff
to recover upon the written paper declared on as the cause of
action. No exception was taken by the defendant to the two
instructions given to the jury. They directed the jury that the
plaintiff was entitled to recover upon the finding of certain facts
therein stated. On appeal by the defendant, it was HELD:

1st. That the above statement of the appellant's solicitor was not to
be understood as importing that the appellant acquiesced in the
instructions of the Court *as constituting the whole law of the case;*
but only as covering the same points presented by its *second, third*
and *fourth* prayers.

2nd. That it must be understood that the appellant's counsel intended
to accept the instructions granted, in lieu of those prayers
which were withdrawn, and not to waive or abandon the position
asserted in its first prayer; especially when in terms, an exception
was reserved to the rejection of that prayer.

The plaintiff wishing to obtain an insurance on his interest in the Bark
P., his agents L. C. & Co. employed F., an insurance broker, who
obtained from W., agent of the defendant, the following paper,
dated June 20th, 1878: "No. 1002—$1200. D. S. F. and M. Ins. Co.,
Wilmington, Del. This certifies, that we have this day entered in
the name of L. C. & Co., for whom it may concern, on our open

Delaware State F. & M. Ins. Co. *vs.* Shaw.

policy No. 1002, with the D. S. F. & M. Ins. Co., a risk of twelve hundred dollars on Bark P., at and from June 20th, 1878, to June 20th, 1879, loss if any, payable in current funds to Messrs. L. C. & Co., or order, according to the terms and conditions of the policy." (Signed,) "J. S. W., agent." This paper was delivered by the broker to L. C. & Co., and by them assigned in writing to the plaintiff. No policy was ever prepared or issued by the company. In an action to recover a loss on said vessel brought by the plaintiff against the defendant in which said paper was declared on as the cause of action, or contract of insurance, it was HELD:

That said paper did not constitute a valid and binding contract of insurance, nor could an action be maintained on it as such.

Whether the plaintiff might be entitled to a remedy in another form of action, or in another forum, *Quære?*

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—The defendant offered five prayers, all of which, except the fifth, were rejected by the Court, (BROWN, J.,) and the Court gave the following instructions to the jury:

1. If the jury shall believe from the evidence that the plaintiff at the time when the certificate of insurance of the bark Palestina was executed, was her owner, and that he authorized Loud, Claridge & Co. to insure her, and that said firm employed the witness, Forrest, an insurance broker, to procure such insurance, and that he accordingly obtained from the defendant, acting by its general agent in Baltimore, Watkins, the certificate of insurance given in evidence, and that said Watkins was not authorized by the defendant to execute said certificate, and that said Forrest knew, or as a reasonable man from the facts within his knowledge had good reason to believe, at the time when he obtained said certificate, that said Watkins

was not authorized by the defendant to execute said certificate, and that defendant, on being informed of the execution thereof, ordered it to be cancelled, and that said order was made known to said Forrest, then the plaintiff cannot recover.

2. But if the jury shall believe from the evidence that the plaintiff at the time when the certificate of insurance of the bark Palestina was executed, was her owner, and that he authorized Loud, Claridge & Co. to insure her, and that said firm employed the witness, Forrest, an insurance broker, to procure such insurance, and that he accordingly obtained from the defendant, acting by its general agent in Baltimore, Watkins, the certificate of insurance given in evidence, and that said Watkins was not authorized by the defendant to execute the said certificate, but that the defendant, on being informed of its execution, ordered it to be cancelled, yet if the jury find that said Forrest at the time of the execution of said certificate, believed, and as a reasonable man from the facts within his knowledge had good reason to believe, that said Watkins had authority to execute it; and if the jury also believe that said bark after the execution of said certificate, and before the institution of this suit, was totally lost by perils of the sea, then the plaintiff is entitled to recover.

The defendant then withdrew its second, third and fourth prayers, saying by its attorney, that the instructions covered the same points, and were satisfactory to him, but he reserved an exception to the rejection of his first prayer, which prayer is as follows:

1. That the paper for insurance declared on by the plaintiff in this action, is not such a contract in law as entitles him to sue upon it in this case, and the verdict of the jury must therefore be for the defendant.

To which rejection of its first prayer, the defendant excepted.

The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., ALVEY, ROBINSON and IRVING, J.

*R. Emmett Jones*, for the appellant.

*Sebastian Brown*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

It appears by the record that five prayers were offered by the appellant, the defendant below. The *fifth* was granted; all the others were refused. Two instructions were given by the Court to the jury. "The defendant then withdrew its *second, third* and *fourth* prayers, saying by its attorney, that the instructions of the Court covered the same points, and were satisfactory to him; but he reserved an exception to the rejection of his *first* prayer."

The *first* prayer denies the right of the plaintiff to recover upon the written paper declared on as the cause of action.

No exception was taken by the appellant to the two instructions given to the jury. Consequently, they are not subject to review on this appeal. They directed the jury, that the plaintiff was entitled to recover upon the finding of certain facts therein stated, and the appellee contends that these instructions constitute the law of the case, binding on the appellant which acquiesced therein, and that it cannot be heard to insist upon its *first* prayer, which was entirely inconsistent with the instructions granted.

We do not understand the statement contained in the bill of exceptions, above recited, as importing that the appellant acquiesced in the instructions of the Court, *as constituting the whole law of the case;* but only as covering

the same points presented by its *second, third* and *fourth* prayers. These are not set out in the record. It must be understood, however, that the appellant's counsel intended to accept the instructions granted in lieu of those prayers which were withdrawn, and not to waive or abandon the position asserted in its *first* prayer. Especially when in terms, an exception was reserved to the rejection of *that* prayer. It is, therefore, properly before us for consideration.

It asserts that "the paper for insurance declared on by the plaintiff in this action is not such a contract in law as entitles him to sue upon it in this case, and that the verdict must be for the defendant."

The plaintiff was owner of *one-eighth* of the bark "Palestina," which was about to proceed on a foreign voyage, and wishing to obtain an insurance thereon for $1200, his agents, Loud, Claridge & Co., employed *Forrest*, an insurance broker, who obtained from *Watkins*, agent of the defendant in Baltimore, the following paper:

"No. 1002.　　　　　　　　　　　　　　$1200.
Delaware State Fire and Marine Insurance Co., Wilmington, Del.

This certifies that we have this day entered in the name of Loud, Claridge & Co., for whom it may concern, on our open policy No. 1002, with the Delaware State F. & M. Insurance Company, a risk of twelve hundred dollars on bark Palestina, at and from June 20th 1878, to June 20th 1879, loss if any, payable in current funds to Mess. Loud, Claridge & Co., or order, according to the terms and conditions of the policy.

　　　　　　　　　　　　"James S. Watkins
　　　　　　　　　　　　　　"Agent.

"Valued $10,000.
　"Baltimore, June 20th 1878.
　"$1200 at 12 (00) per cent. $144."

This paper was delivered by the broker to Loud, Claridge & Co., and by them assigned in writing to the plaintiff.

The bark being lost, the plaintiff called on the defendant and demanded payment; but the defendant refused to pay the loss, alleging that it had never insured the bark. No policy was ever prepared or issued by the Company.

The paper signed by Watkins is declared on as the cause of action, or contract of insurance, and the question raised by the *first* prayer, is whether it constitutes a valid and binding contract of insurance, assuming that Watkins was the general agent of the Company, authorized to enter into contracts of insurance in its name and on its behalf.

This depends upon the construction of the written paper, the Court below, having very properly excluded the evidence of the opinions of *Forrest* and *Watkins* upon the validity of the paper, to bind the defendant.

Before considering the terms and effect of the paper declared on in this case, it may not be out of place to refer to what has been said in decided cases and by text writers on the subject of what are known in marine insurance as "*Slips.*" Mr. Arnold in his excellent work on *Marine Insurance, page* 246, (*4th Eng. Edition,*) says:

"The broker when requested to effect an insurance, prepares a brief memorandum of the leading particulars of the proposed risk, such as to convey at a glance to those who are skilled in the business, a sufficient notion of the intended policy, to enable them to say whether and at what premium they will underwrite it. This memorandum, called the *Slip,* is presented, if at Lloyd's, successively to the underwriters there, who if they think well of the risk, and the premium at which it is either offered, or has already in part been taken, *initial the* slip, each for the sum he thinks proper to underwrite, and so on until the whole amount is subscribed.

" If the application be to the companies, a fresh slip is presented to each, and the secretary or underwriter, in case the risk be taken, *initials* it for so much. The only purpose that such a slip can now serve, is that it shows the broker how far and at what premium he can provide for the insurance required. It enables him to draw up the policy on the proper stamp for signature at Lloyd's, and each company to frame their own policy on the terms proposed.

"As to whether there be an engagement by *initialing the* slip, that ought to be considered binding in honor, is not a question suitable to these pages. All those questions which have, from time to time, been mooted at the bar, and even on the bench, as to the effect of this initialed memorandum, either at law or in equity, have at length been quieted by the statute so often referred to in the course of the last few pages. (30*th & 31st Victoria.*) It is enacted that every contract or agreement for sea insurance is invalid unless expressed in a policy, and that such policy, if not duly stamped before being underwritten, shall not be pleaded or given in evidence in any Court, or admitted in any Court to be good or available in law or in equity.

" In the United States where the restrictions of the revenue law do not interfere, and the great bulk of sea insurance business is carried on by companies, it is very generally the case that a memorandum of the contract, or an agreement to insure is made out and subscribed before executing the policy. In such case, the usual practice," says Mr. Phillips, " is to enter the agreement on the books of the insurance company, subscribed by some officer authorized to bind the company. Such a memorandum is binding on the company to make out a policy, if the premium is paid in due time." 1 *Phil. on Ins.*, 10, (*sec.* 13.)

In *Mackenzie vs. Coulson, L. R.*, 8 *Eq. Cases*, 368, a policy of insurance had been executed and delivered,

and suit brought thereon by the assured, a bill in equity was filed by the underwriters for the purpose of restraining the action at law, and to have the policy reformed, so as to make it conform to the terms of the *slip* initialed by the underwriter.

The *Vice-Chancellor* referring to the slip, and its legal effect said: " In point of law, and in fact, it amounted to no more than a statement by the underwriters of their willingness to effect a policy on these terms. To treat it in any other light would be a violation both of common and statute law. Repeated authorities have decided that I am not at liberty even to look at that slip, as evidence of a contract. I am bound by law to hold that it did not amount to a contract of any kind." That case arose in 1869 after the Statutes of 30 and 31 Vic. were in force.

By the Statutes of 35 Geo. 3, ch. 63, sec. 11, and 54 Geo. 3, ch. 144, secs. 3, 4 and 5, contracts of marine insurance were required to be in writing and stamped.

In 1863, the case of *Xenos vs. Wickham,* came up before the Court of *Exchequer,* (14 *J. Scott, N. S.,*) 108 *Eng. C. L. R.,* 435, and on appeal in the House of Lords, (*Id.,* 859.) There the policy had been executed, and remained in the possession of the company, and the main question was whether it had been delivered, so as to entitle the assured to sue upon it. The question of the effect of the *slip* was considered, and in the very able opinion of BLACKBURN, J., who with MELLOR, J., dissented from the opinion of the majority in the Exchequer, and whose opinion on the main question was affirmed in the House of Lords, he says (*page* 452,) "The plaintiff's company had authorized Mr. Lascandi to obtain for them insurance to the extent of £5000, on the Steamer Leonidas between England and the Baltic, from the 25th of April 1861, to the end of the season at eight guineas per cent. Mr. L. in the usual way prepared a *slip* containing these terms, and it was initialed by different private underwriters for sums

in the whole amounting to £3000, and by the authorized clerk of the defendant's company for £2000. This, as is well-known, amounts to an agreement between the broker and the different underwriters who have initialed, that they shall bear the risk to the extent to which they have initialed the slip, and shall receive the premiums accordingly, and this agreement is perfectly binding in mercantile honor, and but for the operation of the stamp laws would also be enforceable at law."

So in *Parry vs. The Great Ship Co.*, in the Queen's Bench in 1863, (4 *Best & S.*, 556,) it was said by COCKBURN, Ch. J., that the contract, evidenced by the slip "could not be enforced at law or in equity, because the Stamp Act intervenes," (referring to the Statutes of *Geo. III.*)

It may be inferred from these cases that the Vice-Chancellor went too far in *Mackenzie vs. Coulson*, in saying that the slip in that case, did not constitute a good contract at the common law.

As stated by Justice BLACKBURN in *Xenos vs. Wickham*, the only difficulty in enforcing the contract evidenced by the "slip" in that case, was the want of a stamp required by the Statutes of Geo. III. In comparing the memorandum which forms the cause of action in this case, with the *slip* in *Xenos vs. Wickham* of which Mr. Justice BLACKBURN was speaking, there is a great and striking difference in their language and terms. The slip expressed upon its face a present contract of insurance, while the paper here sued on, is a certificate that an insurance has been entered on an *open policy No.* 1002, and that the loss if any is to be paid *according to the terms* of the policy. Manifestly the written paper does not purport to be a contract of insurance, but refers to a policy which contains the contract and specifies its terms. It cannot therefore be construed to be the contract of insurance; nor can an action be maintained thereon as

such contract.   Whatever remedy the plaintiff might be-
entitled to in another form of action, or in another *forum*,
we are clearly of opinion that he cannot maintain the
present action upon the written paper declared on as a con-
tract of insurance.

We have been referred by the appellee to the *Relief*
*Insurance Co. of N. York vs. Shaw*, 94 *U. S.*, (4 *Otto*, 574,)
in which it was held that " unless prohibited by statute or
other positive regulations, a valid contract of insurance
can be made by parol." Here a contract of insurance
by parol is not alleged, the only contract relied on is
that evidenced by the written paper set out in the decla-
ration ; which as we have said does not in its terms or
by any reasonable construction constitute a contract of
insurance, enforceable as such in an action at law.

Being of opinion that the defendant's first prayer ought
to have been granted, it is unnecessary to refer to the-
motion in arrest.

*Judgment reversed.*

(Decided 28th July, 1880.)