# Home Insurance Co. v. Adler.

*Action on Policy of Insurance against Fire, or for Breach of Parol Agreement to Insure.*

1. *Verbal agreement to insure ; when risk begins.*—A verbal agreement, made in October, to issue a policy of insurance for twelve months in the *early* part of November, covers a loss occurring on the 19th day of November.

2. *Same; when complete, and sufficient to support action for breach.*—A valid agreement to insure a stock of goods against loss by fire may be made verbally, and an action maintained for the breach thereof, on proof that the substantial provisions of the policy were agreed on between the plaintiff and the defendant's authorized agent, pre-payment of the premium being waived, and some of the details left to the judgment of the agent in filling out the policy; that the parties separated under the mu-

[Home Insurance Co. v. Adler.]

tual supposition that the contract was complete, and that a policy was afterwards issued, but subsequent to the loss of the goods, in which the details were filled out according to the understanding of the terms by the agent. .

APPEAL from the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

This case was before this court, on appeal by the present appellant, at its December term, 1882, and was reported in 71 Ala. 516–28. ` The action was brought by Max J. Adler, against the Home Insurance Company, which was described as a " body corporate doing business by and through an agent in said county of Dallas ;" and was commenced on the 24th July, 1879. The plaintiff sued to recover the agreed value of a stock of goods, which the defendant had insured, or agreed to insure, against loss or damage by fire, and which were destroyed by fire on the morning of November 19th, 1878. The complaint contained several counts on a policy of insurance, and several for the breach of an agreement to insure ; and in these different counts, the terms of the policy or agreement were stated in varying language. The original complaint contained six counts, and three were added by amendment after the remandment of the cause on the former appeal ; the third amended count being in these words : " And plaintiff, who, at the several times herein mentioned, contracted and carried on business by and under the name of M. J. Adler & Co., and owned and possessed certain goods, wares and merchandise, and certain household furniture, bedding, and family wearing apparel, all contained in a certain building situated in the town of Camden, in Wilcox county, Alabama, of the aggregate value of $5,000, claims of the said defendant the further sum of $1,500 as damages, with interest thereon ; for that heretofore, to-wit, on the 20th day of October, 1878, the said defendant, for a valuable consideration, undertook, promised and agreed, to and -with plaintiff, that it would execute, issue and deliver to plaintiff, in the early part of November, 1878, its certain contract of insurance in writing, commonly called a ' fire-insurance policy,' in and for the sum of $1,500, payable to said plaintiff, and thereby insure against loss or damage by fire the said goods, wares and merchandise, to the amount and extent of $1,200, and the said household furniture, bedding, and family wearing apparel to the amount and extent of $300, for the period of one year, beginning in the early part of November, 1879, to-wit, on the 5th day of November, 1879. And plaintiff avers, that said defendant wholly omitted, neglected and failed to execute, issue and deliver to said plaintiff the fire-insurance policy aforesaid, and thereby to insure said goods, wares and merchandise, and said household furniture, bedding, and family wearing apparel,

for the period of one year as aforesaid ; and that afterwards, and during said period of one year, and after the date when, by the terms of said agreement, the said contract of insurance should have been executed, issued, and delivered to plaintiff as aforesaid, the said goods, wares and merchandise, and the said household furniture, bedding, and family wearing apparel, were, to-wit, on the 19th day of November, 1878, wholly lost and destroyed by fire ; to plaintiff's damage as aforesaid."

The defendant pleaded the general issue, and the cause was tried on issue joined on that plea; a jury being waived, and the cause submitted to the decision of the presiding judge. The plaintiff's own deposition was taken in his behalf, and was read in evidence on the trial, and he also examined one S. Sterne as a witness ; while the defendant introduced one Kayser as a witness, the local agent in Selma through whom its business was then conducted, and the deposition of one G. C. Green, the defendant's clerk or book-keeper in New York. The evidence showed that said Kayser, the defendant's agent at Selma, was engaged in other business also at that place, and had private business transactions with the plaintiff, outside of his agency for the defendant ; that the plaintiff had obtained a policy of insurance on his stock of goods from the defendant, through said Kayser, for $3,000, beginning September 30th, 1876, and continuing for twelve months ; and that on the 5th November, 1877, he procured another policy, for $2,000, which expired on the 5th November, 1878; that the agreed premium, on each of these policies, was 2½ per-cent., and pre-payment was waived, the amount being charged against plaintiff on his general account with Kayser. It was shown, also, that these policies, after their delivery, were deposited in his safe by Kayser, on the request of the plaintiff, for safe-keeping, and that the latter policy was returned to the defendant in New York by Kayser, as being forfeited on account of the non-payment of the premium, and was marked cancelled on the defendant's books in January, 1878. The plaintiff testified that he had no knowledge or notice of the cancellation of this policy, and supposed that it was still in force on the 19th or 20th October, 1878, at the time of the interview and negotiations between him and Kayser for another policy, on which this action is founded ; while Kayser testified, that he had given plaintiff notice several times that he would be compelled to cancel the policy, if the premium was not paid by the first day of January, 1878. As to what occurred at the interview between plaintiff and Kayser, on the 19th or 20th October, 1878, there were several discrepancies in their testimony, as shown by the following extracts :

*Plaintiff thus testified* : " I was in Selma on the 19th October, 1878, and went there to buy a stock of goods. I am ac-

quainted with Meyer & Co. of that city, of which Sam. Sterne
was then a member.   Kayser introduced me to them.   I pur-
chased a bill of goods from them on that day amounting to
$919.84, paying $350 in cash.   Mr. Sterne waited on me, and
Kayser came in while he was waiting on me.   Sterne asked me,
if I was insured ; and I answered, that I had $2,000 insurance
on my store with Kayser, as agent of the Home Insurance Com-
pany of New York.   Sterne called Kayser up, and asked him,
' *Is Adler insured with you ?*'  Kayser replied, ' *Yes, he is : he
has got a $2,000 policy in the Home Insurance Company of
New York.*'  The stock of goods I had in my store at Camden
were the goods and property referred to.   Kayser told Sterne,
that my policy would soon expire ; but he referred to it as one
in existence, and did not say any thing about its cancellation.
I told him to renew my policy when it expired; and he said he
would do so, and agreed to do so in Sterne's presence.   The
policy referred to was No. 281.   It was that policy he agreed
to renew.   It was understood that it was to be renewed on the
day of its expiration ; that it was to be renewed for one year
from November 5th, 1878.   No demand was made on me for
pre-payment of premium for said renewal.   I made no other or
different agreement with Kayser than that just stated, after
that, in regard to insurance.   I left Selma on the morning of
October 20th, and never saw Kayser again until after the fire."

   *Sterne thus testified*, for plaintiff :  "I saw plaintiff in Octo-
ber, 1878, in our store in Selma, and sold him goods amounting
to over $900.   Kayser came to our store with him at that time,
and said we would be perfectly safe in selling goods to him.
On Kayser's assurance that he was all right, I agreed to sell him
the goods, for $300 or $400 cash, and the balance on credit.
After Kayser left, I asked Adler if he was insured ; and he
said that he was, in the *Home* of New York, represented by
Kayser.   Kayser came up stairs while I was selling the goods
to Adler, and I asked him if Adler was insured, and if his in-
surance was all right.   He answered, that he was sufficiently
insured—for $2,000, I think he said—in the company he rep-
resented.   Kayser said, that he watched Adler's policies, and
attended to them, and renewed them from time to time.   This
was said in Adler's presence.   Adler told Kayser to renew his
policies from time to time ; and Kayser said he would do it.   I
do not remember definitely about the amounts ; but my rec-
ollection is, that it was $2,000, or $3,000,—I am not positive
which."

   *Kayser thus testified*, for defendant :  " When Adler came
to Selma, in October, 1878, I directed him to go to Meyer &
Co. ; and I went to see Sam. Sterne, and told him about Adler
—that he was all right, and would pay part cash, and that he

could give credit for part; and I told Adler to go over to their store. Sterne asked me, if Adler was insured; and I told him, *Yes.* When Adler came to our store, I told him that Sterne had asked me if he was insured, and I told him of his carelessness in paying premiums. He said, '*I thought you attended to my insurance;*' and I answered, '*Yes.*' He said, '*Make me out a policy for $2,000.*' I told him that was too much—that $1,500 on his stock and household furniture was enough. He had no policy then. I told him the policy had been cancelled, but if he would remit to me between the 1st and 5th of the next month (November), he could have a policy. He said that did not suit him. I told him that $1,500 was as much as he was entitled to on all. He left it to me, how much to put on the goods, and how much on the furniture. There was no day stipulated when it was to be done."

It appeared that plaintiff and Kayser never met after this interview, until on the morning of November 20th, 1878, the day after the destruction of the goods by fire, when plaintiff went to Selma, called on Kayser, told him of the fire, and asked for his policy; whereupon Kayser produced from his safe, and delivered to plaintiff, a policy for $1,500,—of which $1,200 was on the stock of goods, and $300 on the furniture. This policy was dated November 19th, 1878, and was in fact filled up by Kayser after the fire had occurred, but before he had heard of it. Plaintiff inspected this policy, and then returned it to Kayser, to be deposited in his safe; and it was afterwards returned by Kayser to the defendant. Sterne testified, also, that he asked Kayser about Adler's policy two or three days after the fire, and that Kayser said it was in his safe.

"On all the evidence adduced," the substance of which is above set out, so far as material, the bill of exceptions recites, "the court found as follows: (1.) That there was a parol contract of insurance between the plaintiff and the defendant, entered into, to-wit, on the 20th October, 1878, whereby the defendant agreed to issue to the plaintiff a policy of insurance on the property, for the sums and time as specified in the 3d count of the amended complaint, filed on the 9th June, 1883. (2.) That the premium to be paid thereon was $2\frac{1}{2}$ per-cent. on the value of the property insured, the whole premium being $37.50, which has never been paid. (3.) That said policy was to issue subject to the condition, that the said company should not be liable, in case of loss, for more than three-fourths of the actual cash value of the property insured immediately before the loss. (4.) That the defendant failed to issue and deliver said policy as it had agreed to do. (5.) That the storehouse, in which said insured property was, was destroyed by fire on the 19th November, 1878. (6.) That the actual cash value of

the merchandise in said storehouse immediately before the fire, and which was destroyed, was $3,000; and the actual cash value of the household furniture, &c., immediately before the loss, and which was destroyed, was $400. (7.) That due notice and proofs of loss were given and made to the defendant, to-wit, on the 29th November, 1878. (8.) That the total amount of said insurance—$1,200 on merchandise, and $300 on household furniture, &c.—less the premium unpaid ($37.50), with interest from the 30th January, 1879, being sixty days after due notice and proofs of loss, is recoverable in this case, as damages for the breach of said parol contract for insurance. And the court thereupon rendered judgment in favor of said plaintiff, and against said defendant, for $2,077, besides costs."

The defendant excepted to this judgment, and to each of the separate findings on which it was founded; and now assigns the same as error.

PETTUS & DAWSON, for the appellant.

BROOKS & ROY, contra.

STONE, C. J.—The testimony in this case reasonably establishes the following propositions of fact: That Kayser was the agent of the appellant corporation, authorized to contract for it, and to assume fire risks in its name; that he and Adler conferred together, and agreed, the latter to take out, and the former to issue a policy of insurance, without pre-payment of premium, and without further negotiation, the one with the other; that the rate of premium, duration of the policy, location of the subject of the insurance, nature of the risk, and substantial details of the policy, were all mutually understood between them; and that they separated with this mutual understanding—the one intending to issue the policy, and the other confidently expecting it would be issued.

We think, also, that the testimony—particularly that which relates to the interview when Sterne was present—justifies the conclusion, that the new policy was to be issued at or soon after the expiration of the old one, or when by its terms it would expire—November 5, 1878. We, therefore, think that a jury, weighing the testimony bearing on this question, would come to the conclusion, that the policy was to be issued early in November, which would fix the agreed date before the property was destroyed by fire; and we should, and do reach the same conclusion.

Adler testified that, according to his understanding, the new, or renewal policy, was to be for two thousand dollars, and entirely on his merchandise. Kayser's testimony is, that the sum

[City Council of Montgomery v. Montgomery Water Works Co.]

of the insurance was to be fifteen hundred dollars—twelve hundred on the merchandise, and three hundred on the furniture. On this discrepancy, the argument is made, that there never was a concurrence of the two minds, and, therefore, there never was a contract to insure. We can not assent to this. It is manifest that Kayser thought he had made an agreement to insure. If he had not, he would not, without further instructions, have issued the policy bearing date November 19. And Adler thought there was such agreement, as his remarks to Kayser, when he reached Selma (remarks not denied, but corroborated by Kayser) tend to show. We think the solution and reconciliation of this discrepancy are found in the fact, of which there is some testimony, that while Adler wished to continue his insurance of two thousand dollars, Kayser was unwilling to let it stand above fifteen hundred ; and the matter of fixing the amount and placing the risk was left with Kayser, as a friend of the assured. The discrepancy, then, does not prove there was no agreement. It is the common case of antagonist witnesses, differing as to some of the terms of their contract. The appellant succeeded in convincing the court of the correctness of its version, and has no ground of complaint, as to this question. We fully concur with the City Court of Selma in its several findings, and the judgment must be affirmed.