(82 South. 175)

## CHEROKEE LIFE INS. CO. v. BRANNUM.
### (8 Div. 148.)

(Supreme Court of Alabama. April 17, 1919. Rehearing Denied May 22, 1919.)

1. INSURANCE ⊜⟩151(2) — APPLICATION AS PART OF CONTRACT.

Under Code 1907, § 4579, providing that no insurance company shall make any contract of insurance other than is plainly expressed in the policy issued thereon, the application is required to be expressly made a part of the policy in order to form part of the contract.

2. INSURANCE ⊜⟩146(3) — CONSTRUCTION AGAINST FORFEITURE.

The rule of liberal construction in favor of assured and strict construction against insurer has been especially applied to forfeiture clauses of policies.

3. INSURANCE ⊜⟩146(2) — LIFE INSURANCE— CONSTRUCTION OF POLICY.

Where the language is unambiguous and there is but one reasonable construction of the contract, the court will expound it as made.

---

⊜⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Insurance ⬦130(1) — Making of Contract—Meeting of Minds.**

Insurance contract is not complete until the minds of the parties have met, and they arrive at an understanding of the terms of the agreement.

**5. Insurance ⬦130(2) — Making of Contract—Application—Acceptance.**

An application for insurance is a mere proposal on part of applicant, the contract not being made until insurer signifies acceptance of it by some act or acts agreed upon by the parties or from which the law raises the presumption of acceptance.

**6. Insurance ⬦131(1), 132 — Contracts—Common Law.**

At common law insurance contract need not be in writing, the whole contract need not be embraced in policy, and insurer may be bound by binding books, binding slips, receipts, or memoranda.

**7. Insurance ⬦151(1) — Life Insurance—Binding Receipt.**

Under Code 1907, § 4579, providing that insurer shall not make any contract of insurance other than that expressed in policy, and in view of sections 4572–4574 and 5382, recovery cannot be had on a life policy sought to be shown only by a binding receipt, slip, or memorandum issued prior to delivery of the policy sued on, not made a part of the application and expressing different conditions precedent from those in application.

**8. Insurance ⬦141(2), 349(3)—Life Insurance—Waiver of Payment of First Premium—Acceptance of Note.**

The taking, by agent with authority, of a note for the first premium waives actual payment of such premium until the note becomes due according to contract provisions, and default in payment of such premium at maturity renders the insurance uncollectable.

**9. Pleading ⬦34(1) — Construction—Replications.**

Replications will be tested, on demurrer, by their weakest averment.

**10. Insurance ⬦136(1)—Condition as to Delivery During Lifetime.**

Even if stipulation, as condition precedent, of payment of first premium and delivery during insured's lifetime and good health were waived by insurer's authorized agent as to condition of good health, yet the conditions of payment of first premium and delivery during insured's lifetime would remain, and where the policy was not delivered nor first premium paid until after insured's death, of which insurer was ignorant, the policy was not enforceable.

**11. Pleading ⬦180(2)—Replications—Departure—Life Insurance.**

Where complaint states cause of action on life policy, replication setting out a binding receipt with conditions precedent different from those stated in application is a departure from complaint.

Appeal from Circuit Court, Madison County; Robert C. Brickell, Judge.

Action by John B. Brannum against the Cherokee Life Insurance Company on a life insurance policy. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The second replication contains the receipt referred to in the opinion, and is as follows:

(2) On said 26th day of October 1916, the defendant, by and through its duly authorized agent Charles B. Tarr, signed and delivered to the plaintiff an instrument in writing in words and figures as follows:

"This receipt is not valid for more than first year's premium nor in excess of a premium on $25,000.00 of insurance. This receipt must not be altered. The settlement as shown herein must correspond in amount with the settlement as shown in the application of corresponding number signed by the applicant.

"Received of John S. Brannum, at Owen's X Roads, state of Alabama, this 26th day of October, 1916, the sum of seventy-eight and 08/100 dollars, in connection with his application for insurance in the Cherokee Life Insurance Company, said application corresponding in date and number with this receipt and containing said applicant's declaration that he paid the sum hereby receipted for, and that he assents to the terms of this receipt, as follows, to wit:

"First, that if a policy be delivered on said application said company shall accept this receipt as cash towards the payment on the first premium of said policy.

"Second, that if the company fails to offer to deliver a policy on said application within ninety days from this date, and if such failure is not attributable to the applicant's neglect or refusal to comply with the company's rules, regulations and requirements as to medical examination and other customary requirements in acting upon application for insurance (and only on this event) the company will return said sum to the applicant upon surrender of this receipt, otherwise the payment will be retained by the company in consideration of this trouble and expense incurred on account of this application.

"Third, that if said company will within ninety days from this date offer to deliver to said applicant a policy of insurance on the plan applied for and said sum in consideration of the trouble and expense it shall have incurred on account of said application," etc.

"Fourth, that this receipt will not be valid for any sum in excess of the sum declared by said applicant in his said application to have been paid. It will not be valid if issued after December 31, 1916. It will not be valid if any erasures or additions have been made in printed form.

"Fifth. That this receipt is nonnegotiable and cannot be assigned or transferred.

"Sixth. If full settlement has been made with this application the insurance will be in force from the date of approval of the completed application by the company medical adviser.

"Seventh. No conditions or agreements other

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

than those printed herein and in the application shall be binding. Conditions on back of this receipt a part of same, as if printed herein.

"[Agent must sign here] Chas. B. Tarr, Agent. No. 46397. AC. Chas. B. Tarr. R. R. Guice. Cherokee Life Insurance Company, Gadsden, Alabama."

On the back is found the following in writing:

"The agent is not authorized to give this receipt to the persons exceeding the limit of height and weight indicated in the table below or to those who have been rejected by another company or who are not in good health."

And plaintiff alleges that full settlement was made with said application by said agent taking the notes of said plaintiff for the premium one for $50 due on delivery of the policy and the other for $28.08 due on January 15, 1917, both of which were paid when due and payment accepted by the defendant and said policy delivered to plaintiff. And plaintiff further alleges that said completed application for insurance was approved by the defendant's medical director on the 4th day of January, 1917, which was prior to the death of said Bertha Brannum.

Hood & Murphree, of Gadsden, and Cooper & Cooper, of Huntsville, for appellant.

R. E. Smith and Spragins & Speake, all of Huntsville, for appellee.

THOMAS, J. The suit was upon a policy of life insurance in Code form, and resulted in judgment for the plaintiff.

Defendant's pleas were: (1) A denial of liability under its policy; (2) that the application which is made a part of the contract provides that the policy shall not become effective "until the first premium is paid and the policy delivered to and received by the applicant during her life and good health"; that the insured died before the payment of the first premium and before the policy was delivered; (3) that the policy was not delivered until after the death of the insured, of which defendant did not know, at the time of delivery of the policy; (4) that the policy was procured to be delivered by the fraud of the plaintiff in withholding (before and at the time of that delivery) information of insured's death.

Defendant's demurrers to the several replications were overruled, and this ruling is duly assigned as error.

[1] Were the replications full answer to the several pleas? Referring to the specific averments of the latter, "the replication for the insurance policy which is made a part of the policy here sued on" was a part of the policy as required by the statute and its construction by this court. Code 1907, § 4579; Prudential Casualty Co. v. Kerr, 202 Ala. 259, 80 South. 97; Mut. Life Ins. Co. v. Lovejoy, 201 Ala. 337, 78 South. 299, 301, L. R. A. 1918D, 860; Norris v. N. E. Mut. Life Ins. Co., 198 Ala. 41, 73 South. 377; Pac. Mut. Life Ins. Co. v. Hayes, 200 Ala. 246, 76 South. 12; Locomotive Engrs. Mut. L. & A. Ins. Asso. v. Hughes, 201 Ala. 58, 77 South. 352; Supreme Ruler, etc., v. Darwin, 201 Ala.

687, 79 South. 259; Ill. Surety Co. v. Donaldson, 79 South. 667, 670;[1] Eminent Household of Col. Woodmen v. Blackerby, 78 South. 821.[2] Of this written contract of insurance with the application therefor expressed therein, it is averred that the contract stipulated that "said policy *should not take effect* until the first premium is paid and the policy delivered to and received by the applicant *during her lifetime and in good health*," and pleas 2 and 3 aver that the policy was not so delivered during the life and good health of Mrs. Brannum, but after her death, and (plea 3) of which fact the defendant did not know at the time of the delivery of said policy. The fourth plea avers that—

"The application for the policy sued which is made a part hereof and was signed by the assured stipulates that the policy should not take effect until the first premium is paid and the policy delivered to the applicant during her lifetime and good health, and * * * that said premium had not been paid and the policy delivered when the insured died, but that the policy was procured to be delivered by the fraud of the plaintiff in this, that plaintiff, after the death of the insured, called up the defendant by long distance phone, and asked that said policy be delivered, and concealed from the defendant the fact that the insured was then dead, and thereby induced the defendant to forward said policy attached to a draft for the first premium to the bank of New Hope to be delivered on the payment of the draft, and thereafter plaintiff paid said draft and secured the policy before defendant had any knowledge of the death of the insured, and gave no notice thereof until several days after her death and until he had secured and delivered the policy as above stated."

Plaintiff took issue on these pleas. Further replying to pleas 2, 3, and 4, he said that on the date of the application for insurance (October 26, 1916) the defendant through its authorized agent signed and delivered to the plaintiff an instrument in writing, known in insurance law as a "binding slip or memorandum" (Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 427, 65 South. 143), which is embodied in the replications and will be set out by the reporter. It is recited and stipulated in this receipt that there had been received of John S. Brannum, on "this 26th day of October, 1916, the sum of seventy-eight and 8/100 dollars, in connection with his application for insurance in the Cherokee Life Insurance Company, said application corresponding in date and number with this receipt and containing said applicant's declarations that he has paid the sum hereby receipted for, and that he assents to the terms of this receipt, as follows, to wit: First, that *if a policy be delivered on said application*, said company shall accept this receipt as cash towards the payment of the first premium of said policy. * * * Sixth, if *full settlement has been made with this application the insurance will be in force from date of ap-*

*proval of the completed application by the company's medicaɩ director"* (italics supplied). Plaintiff further replied to said pleas (2, 3, and 4) by the additional averment (replications 4 and 5) that—

"The defendant did not, prior to the death of said Bertha Brannum, or prior to the delivery of the policy, notify the plaintiff or said Bertha Brannum, by notice brought home to them or either of them, that said instrument in writing or receipt was not further binding on defendant."

[2] It is a familiar declaration of the courts that contracts of insurance are liberally construed in favor of the assured, and, if doubtful, such contracts are construed against the insurer. Union Cent. Rel. Asso. v. Johnson, 73 South. 816;[3] Allen v. Standard Ins. Co., 73 South. 897;[4] Empire Life Ins. Co. v. Gee, 178 Ala. 492, 60 South. 90; Equitable Life Ass. Soc. v. Golson, 159 Ala. 508, 48 South. 1034; Nat'l Life & Acc. Ins. Co. v. Lokey, 166 Ala. 174, 52 South. 45; Piedmont, etc., Co. v. Young, 58 Ala. 476, 29 Am. Rep. 770; Mobile Marine Dock & Mut. Ins. Co. v. McMillan & Son, 27 Ala. 77. This construction has been especially applied to forfeiture clauses of such contracts. Equitable, etc., v. Golson, supra; Continental Cas. Co. v. Ogburn, 175 Ala. 357, 57 South. 852, Ann. Cas. 1914D, 377.

[3] Where the language is unambiguous and there is but one reasonable construction of the contract, the court will expound it as made. Union, etc., v. Johnson. supra; Empire Co. v. Gee, supra; Union Mut. Aid Asso. v. Carroway, 201 Ala. 414, 78 South. 792, 793.

[4, 5] A contract of insurance is not complete until the minds of the parties have met and they arrive at an understanding of the terms of the agreement, proposals of the one party being accepted by the other, and the risk does not attach until the conditions precedent have been fulfilled. An application for insurance is a mere proposal on the part of the applicant. When the insurer signifies acceptance of it to the "proposer," the minds of the parties meet and the contract is made. Webster's International Dictionary, p. 1719, Proposal; Commercial Fire Ins. Co. v. Morris, 105 Ala. 498, 505, 506, 18 South. 34; Eppes v. M., G. & T. R. Co., 35 Ala. 33; Black's Law Dict. p. 954. The acceptance must be signified by some act or acts agreed upon by the parties, or from which the law raises the presumption of acceptance. Heiman v. Phœnix Mut. Life Ins. Co., 17 Minn. 153 (Gil. 127) 10 Am. Rep. 154; Schwartz v. Germania Life Ins. Co., 18 Minn. 448 (Gil. 404); McCully's Adm'r v. Phœnix Mut. Life Ins. Co., 18 W. Va. 782; Covenant Mut. Ben. Asso. v. Conway, 10 Ill. App. 348; Rowland v. Springfield, &c. Ins. Co., 18 Ill. App. 601.

[6] It is certain that the common law makes no requisition that contracts for insurance be in writing (1 Phillips on Ins. §§ 8 et seq., 10, 13; 1 Duer on Ins. 60; Mobile Dock & Marine Ins. Co. v. McMillan, 31 Ala. 711), or that the whole contract of insurance be embraced in a policy plainly expressing its terms. In the absence of statutory provision forbidding parol contracts to insure, memorandum contracts or binding receipts or slips or books, it is established that an agent, duly authorized to bind the company by the issue and delivery of contracts for insurance, may make such binding contracts by parol, binding books, binding slips, receipts, or memoranda. Mackenzie v. Coulson, L. R. 8 Eq. Cases, 368; Xenos v. Wickham, 108 Eng. C. L. 435; H. L., Id. 859; Relief Fire Ins. Co. v. Shaw, 94 U. S. 574, 24 L. Ed. 291; 9 Rose's Notes, pp. 152, 153; Humphry v. Hartford Fire Ins. Co., 15 Blatchf. 504, Fed. Cas. No. 6875; Harron v. London Fire Ins. Co., 88 Cal. 16, 25. Pac. 982; Hartford Fire Ins. Co. v. Wilcox, 57 Ill. 180; Philadelphia Fire Asso. v. Smith, 59 Ill. App. 655; Brown v. Franklin Mut. Fire Ins. Co., 165 Mass. 565, 43 N. E. 512, 52 Am. St. Rep. 534; Baker v. Comm. Union Assur. Co., 162 Mass. 358, 38 N. E. 1124; Edwards v. Sun Ins. Co., 101 Mo. App. 45, 73 S. W. 886; Fish v. Cottenet, 44 N. Y. 538, 4 Am. Rep. 715; Cooke v. Ætna Ins. Co., 7 Daly (N. Y.) 555; Stehlick v. Milwaukee Mech. Ins. Co., 87 Wis. 322, 58 N. W. 379; Croft v. Hanover Fire Ins. Co., 40 W. Va. 508, 21 S. E. 854, 52 Am. St. Rep. 902; Schlesinger v. Columb. Fire Ins. Co., 37 App. Div. 531, 56 N. Y. Supp. 37; Delaware State F. & M. Ins. Co. v. Shaw, 54 Md. 546; 1 Joyce on The Law of Insurance, § 64; 1 May on Insurance (4th Ed.) § 59. Mr. May says:

"* * * Both insurer and insured under an interim receipt are bound by the conditions of the policy ordinarily issued by the company. * . * * Agents not unfrequently make minutes of their contracts in what are called 'binding books,' and in this way may bind several companies to one insured, each for its proportion of the total insurance required." Section 59. "A contract of insurance made by what is sometimes called an intermediary receipt given by an agent, that is, a receipt for the premium, containing a statement that the receipt is subject to the approval of the insurers, to be notified to the insured, and certifying that meanwhile the applicant is insured for a specified time, may be canceled within the time specified, and at any period prior to that time, if notice of disapproval be given." 1 May on Ins. (4th Ed.) § 69.

Mr. Joyce, in his Law of Insurance, § 64, summarizes the general purport of the decisions on this question as follows:

"(1) If the act of acceptance of the risk by the agent and the giving by him of a receipt is within the scope of the agent's authority, and nothing remains but to issue a policy, then the receipt will bind the company. (2) Where an agreement is made between the applicant and the agent whether by signing an application containing such condition, or otherwise, that no liability shall attach until the principal approves the risk and a receipt is given by the

[3] 198 Ala. 488.    [4] 198 Ala. 522.

agent, such acceptance is merely conditional, and is subordinated to the act of the company in approving or rejecting; so in life insurance a 'binding slip' or 'binding receipt' does not insure of itself. When, properly executed it protects the applicant for insurance against the contingency of sickness intervening its date and the delivery of the policy, if the application for insurance is accepted. If the latter is not accepted, or refused, in the valid exercise by the company of its rights, the 'binding slip' ceases eo instanti to have any effect. (3) Where the acceptance by the agent is within the scope of his authority, a receipt containing a contract for insurance for a specified time which is not absolute but conditional, upon acceptance or rejection by the principal, covers the specified period, unless the risk is declined within that time, and it has been held in these cases that the company may not arbitrarily reject after a loss."

As illustration of the construction other courts have placed on such contracts to insure, in Marks, Adm'x, v. Hope Mut. Life Ins. Co., 117 Mass. 528, a receipt was given by the general agent of the company, who agreed, if the application was approved by the company, to furnish a policy within 30 days' time, "or, if the application is declined, to return the above amount to him (applicant) or his order, *on demand and return of this receipt;* it being expressly understood and agreed that no liability is assumed by the company, unless the said risk is approved and a policy issued at the home office" (italics supplied); the application was approved by the company and a policy was sent to the agent within 30 days; but before *delivery* the applicant died and the agent returned the policy. Held, the receipt did not operate as present insurance for 30 days or until a policy should be furnished, and was of no effect except as an agreement to return the money if the application was declined, and its purpose was not to operate as ad interim insurance. Where a party wishing to obtain insurance on his interest in the bark P., his agents, L. C. & Co., employed F., an insurance broker, who obtained from W., agent of the company, this paper, dated June 20, 1878:

"No. 1002. $1,200. D. S. F. & M. Ins. Co., Wilmington, Del. This certifies that we have this day entered in the name of L. C. & Co., for whom it may concern, on our open policy No. 1002, with (said Co.) a risk of $1,200 on bark P. at and from June 20, 1878, to June 20, 1879, loss, if any, payable in current funds to Messrs. L. C. & Co., or order, according to the terms and conditions of the policy. [Signed] J. S. W., Agent."

This paper was delivered by the broker to L. C. & Co., and by them assigned in writing to plaintiff. No policy was ever issued by the company. In a suit on said paper for a loss on said vessel, it was held that the same did not constitute a valid and binding contract of insurance, nor could an action be maintained on it as such, for the reason it referred "to a policy which contains the contract and specifies its terms." Del. State F. & M. Ins. Co. v. Shaw, supra.

Before the approval of the act of February 18, 1897 (Gen. Acts 1896–97, p. 1377), "To regulate the business of insurance in the state of Alabama," the general rule of parol contracts of insurance, of binding books, receipts, slips, or memoranda was recognized in this jurisdiction. Mobile Marine Dock & Mutual Ins. Co. v. McMillan & Son, 31 Ala. 711, 719; Ala. Gold Life Ins. Co. v. Mayes, 61 Ala. 163, 166; Home Ins. Co. v. Adler, 77 Ala. 242, 247; Commercial F. Ins. Co. v. Morris & Co., 105 Ala. 498, 505, 18 South. 34. And a contract to issue a policy of insurance, or a contract of insurance, or an agreement to renew an existing policy, is held to be without the statute of frauds; and it is not necessary that such contracts or agreements be in writing. Commercial F. Ins. Co. v. Morris & Co., supra; Springfield F. & M. Ins. Co. v. De Jarnett, 111 Ala. 248, 259, 19 South. 995.

When the act of 1897 was codified, its section 27 found place in the Code of 1896 as section 2602, and in the Code of 1907 as section 4579. It contains the following:

"No life, nor any other insurance company, nor any agent thereof, shall make any contract of insurance, or agreement as to policy contract, other than is plainly expressed in the policy issued thereon. * * *"

Our construction of this statute eliminated therefrom bonds of indemnity assuring the fidelity of employés (Surety Co. v. Donaldson, supra); insurance contracts issued by fraternal and mutual benefit associations operated merely on the assessment plan (Locomotive Engrs. Ins. Asso. v. Hughes, supra); and mutual benefit insurance by secret benevolent societies. Eminent Household of Col. Woodmen v. Blackerby, supra; Supreme Ruler, etc., v. Darwin, supra.

Of recent decisions of this court, it may be well to advert to Sun Ins. Office v. Mitchell, 186 Ala. 420, 65 South. 143, where the complaint (both counts thereof) was in Code form on a parol contract of fire insurance. Plaintiff gave evidence that he made application for insurance on his said property to the authorized agent. The rate, the amount of insurance, the terms, and the subject-matter were agreed upon; and the specific understanding was that the insurance began forthwith, the company having the right to cancel the contract if it chose. Defendant's agent as a witness admitted the application and negotiation for insurance at the time specified by plaintiff, denied that the terms of insurance were agreed upon, and stated that the effect of the negotiations was to submit the application, and if the company accepted that class of risk he would inspect the property, and upon favorable inspection would issue the policy of insurance. Held, that an agent authorized

to solicit and receive applications for fire insurance, and, at his discretion, to countersign and issue policies of insurance intrusted to him by the company for that purpose, is regarded quoad hoc as a general agent of the company; that such an agent "may make valid contracts by parol, or by a binding slip or memorandum," and the general authority to solicit insurance, receive premiums, and issue and deliver policies is "sufficient to cover an executory contract to insure." The parol contract of insurance on which such recovery was had was made since the enactment of the statute codified as section 4579 of the Code of 1907. Under this decision a second class of exceptions to the statute was declared to exist, to wit, parol contracts of insurance, or agreements of insurance evidenced by binding books, slips, receipts, and memoranda for such insurance that do not fall within the class of contracts known as a policy of insurance.

In Prudential Casualty Co. v. Kerr, 80 South. 97, 99,[5] the words "policy" and "policy of insurance" are defined to be "the formal written instrument in which a contract of insurance is embodied," and as "being the written contract of insurance, in contradistinction to the parol agreement to insure," citing sections 4573, 4574, 4579, and 5382 of the Code of 1907. In section 4572 the provision is made that—

"No written or oral misrepresentation, or warranty * * * in the negotiation of a contract or policy of life insurance, * * * shall defeat or void the policy, * * * unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

This provision would thus appear to recognize a distinction between a "policy of insurance" and a "contract to insure." In sections 4573, 4574, Code, the provisions are limited to a policy of insurance. The forms for suit under section 5382 are, respectively, on "a policy of life insurance" (form 12), "a policy of fire insurance" (form 13), "a policy of marine insurance" (form 14).

The Mitchell Case, supra, held that form 13 was adaptable to a parol contract of insurance, and was broad enough to support a judgment where the proof showed that no formal policy had issued, but that such parol agreement for insurance was consummated between the parties. In Royal Exchange Assurance, etc., v. Almon, 80 South. 456, 458 [6] (where the suit was on an insurance policy), is contained the declaration:

"Appellee further suggests that, if the policy were void, the jury may have found a verbal contract of insurance, and that such a finding would support a judgment on a complaint in Code form. It is deemed enough to say on this point that the evidence pointed to no other contract than that alleged to be shown by the instrument in evidence. Any action for a breach

of promise to insure must be brought against the agent of the defendant."

This is not at variance with the Mitchell Case, supra.

In Pacific Mutual, etc., v. Hayes (2), 80 South. 834,[7] it was declared that the reinstatement of a lapsed policy of life insurance was not the making of a new contract of insurance, but was only treating the original contract of binding force as if no cause of forfeiture had occurred or existed. Alabama State Mut. Ass. Co. v. Long C. & S. Co., 123 Ala. 667, 26 South. 655. In Mutual L. I. Co. v. Lovejoy, supra, 201 Ala. 337, 78 South. pp. 300, 301, L. R. A. 1918D, 860, the court said:

"In the application for reinstatement the insured had agreed that appellant would not be liable under the policy should he die by his 'own hand or act, whether sane or insane, within one year from the date of such placing in force.' And the violation of this agreement is relied upon by the appellant as a complete defense to this cause of action. One of the grounds of demurrer assigned to the pleas, setting up this defense, takes the point that it does not appear that such an agreement in the application for reinstatement is plainly expressed in the policy sued on, as required under section 4579 of the Code of 1907. It is insisted on the part of the appellant that the provisions of the above-cited statute have no application to a renewal or the reinstatement of a policy, but only have reference to the original contract of insurance. This question was considered, however, by this court, in the comparatively recent case of Mutual Life Ins. Co. v. Allen, 166 Ala. 169, 51 South. 877"

—wherein it was held that the statute was broad enough to include any contract or agreement as to the policy, whether it related to the issuance of the policy, or to a renewal, revivor, or reinstatement of same.

The statute under discussion was again considered in Norris v. New Eng. Mut. Life Ins. Co., 73 South. 377.[8] The evidence was without dispute that the amount of the first premium was to be paid in quarterly installments. The insured had executed his note to the soliciting agent in payment of the first installment, which note was discounted by the general agent of the company and the portion due the company remitted thereto. The other three notes were payable to the defendant company, and due, respectively, three, six, and nine months after date, stipulating that such sums were for a part of the premium on the policy, and reciting that the note, if not paid at maturity, was not to be considered as a payment of the premium, and that the policy would become forfeited without notice. No part of said notes were paid. It was said:

"We are also clear to the view, under the authority of the Satterfield Case [171 Ala. 429, 55 South. 200], and of the undisputed evidence in this case, that the provisions of section 4579, Code 1907, have not been infringed upon by the conclusion here reached. As stated in the

[5] 202 Ala. 259.     [6] 202 Ala. 374.              [7] 202 Ala. 450.     [8] 198 Ala. 41.

opinion in that case, the purpose of that statute 'is to protect the person insured from being overreached by agreements outside of the policy not fully understood by him.' The application is a part of the policy contract, and the language of the contract is plain, and clearly shows that the assured could not have been misled or deceived thereby. The applicant knew he had not paid the initial premium, but had merely given notes which had not been paid."

Of this, in the case of Satterfield v. Fidelity Mutual Life Ins. Co., 171 Ala. 429, 433, 434, 55 South. 200, 201, it is declared:

"While the taking of the notes doubtless waived the actual payment until the maturity of the notes, yet it is evidently competent to show by parol that said notes were not paid at maturity, in which event the policy became, according to the contract, absolutely void. 17 Cyc. 656 et seq., and notes; Pitt, Adm'x, v. Berkshire Life Ins. Co., 100 Mass. 500, 503, 504. * * * In the policy now under consideration, the policy states that the application 'is made a part hereof, a copy of which is hereto attached,' and the evidence shows that said application was, in fact, attached to the policy, and became a part of the policy, as fully as if embodied in it, and its terms were thus plainly expressed in the face of the policy. The policy and the application with the precedent conditions formed only one contract. Sewall v. Henry, 9 Ala. 24, 30; Doe ex dem. Holman et al. v. Crane et al., 16 Ala. 577; Strong's Ex'rs v. Brewer, 17 Ala. 706, 712; Rives, Adm'r, v. Toulmin, 19 Ala. 288, 294. If the two constituted but one contract, then it necessarily follows that whatever appears upon either is a part of the policy of insurance, and the spirit and purpose of the statute, as well as its letter, is complied with by attaching the two together on the same paper, so that all the provisions of the contract are before the eyes of the insured."

[7] Under the foregoing construction given section 4579 of the Code, if recovery may not be defeated under different or superadded terms of a written reinstatement not made a part of a policy by a "rider agreement" affixed thereto (Ins. Co. of N. A. v. Williams, 77 South. 159, 161 [9]), it is difficult to understand how a recovery may be had under the Code form on a policy of life insurance sought to be shown only by a binding receipt, slip, or memorandum, not made a part of the application for insurance, expressing different conditions precedent to those in the application for insurance.

An analogous case from Virginia is where the written agreement of the parties and that binding the applicant is the application for the policy, providing that the insurance should take effect only on payment of the first premium and delivery of the policy during the continuance in good health of the insured. Held, such was the condition precedent to the company's liability, notwithstanding the verbal agreement of the agent that the policy would be delivered as soon as issued by the company. Oliver v. Mutual Life

[9] 200 Ala. 681.

Ins. Co., 97 Va. 134, 33 S. E. 536. In Ala. Gold Life Ins. Co. v. Mayes, Adm'r, 61 Ala. 163, a part of the premium on a policy of life insurance was paid in cash, a note being given for the remainder. The receipt recited that, if said application should be approved and accepted by the company, a policy would be issued, and applicant would be insured from the date of said receipt. Judge Brickell says:

"The application for insurance was no more than a proposition from the deceased to the appellant to enter into a contract of insurance. It has not in it a word proceeding from the appellant. It was the act of, and proceeded from, the deceased alone; and it remained his act, a mere proposition for a contract, until the appellant assented to it, and agreed to accept the risk on the terms stated. * * * The receipt given by the agent to the deceased, at the time of receiving the application, indicates the real character of the transaction. Neither party then contemplated a contract complete in itself, or supposed there was more than a proposition for a contract. It is stated in express terms in this instrument that the deceased has made an application for a policy of insurance on his life for $5,000, the payment of a certain part of the first annual premium, interest, and policy fees in cash, and the execution of the note of the deceased for the remainder of the premium. It is further stated the deceased was to be considered insured from the date of the receipt, 'if said application shall be approved and accepted by said company, in which case a policy shall be issued to him and this receipt surrendered; but if said application should be rejected, then the amount named, and the note given shall be returned to said George Blakely, and this receipt shall become null and void.'"

In the instant case, defendant says by its second plea that the application for insurance, made a part of the policy, provides that said insurance shall not become effective until the "first premium is paid and the policy delivered to and received by the applicant during her life and good health." The plaintiff's replications set out the "binding receipt" containing as its first and precedent condition that, "if a policy be delivered on said application, said company shall accept this receipt as cash towards the payment of the first premium of said policy;" and (sixth clause) "if full settlement has been made with the application the insurance will be in force from date of approval of the completed application by the company's medical director."

[8] Under Satterfield v. Fidelity Mut. Life Ins. Co., supra, the taking of a note (by an agent with authority) for the first premium waives actual payment of such premium until the note becomes due according to contract provisions; and default in payment of such premium at maturity renders the insurance uncollectable. Norris v. New Eng. Mut. Life Ins. Co., supra; Powell v. Prudential Ins. Co., 153 Ala. 611, 45 South. 208; Batson v. Fidel-

ity Mut. Life Ins. Co., 155 Ala. 265, 269, 46 South. 578, 130 Am. St. Rep. 21; Manhattan Life Ins. Co. v. Hereford, 172 Ala. 434, 55 South. 497.

[9] Keeping in mind the recognized distinction between a contract *to insure* and a contract *of insurance* (the executed agreement to insure), we may inquire, What is the contract set up by the respective pleadings? According to the averments of the pleading, When were the premiums in the instant application for insurance due and payable on the part of the assured, and when did the approval of the application for the insurance and the contract become the binding policy of insurance of defendant? As to the subject-matter and dates of maturity of said notes, it is averred that the first premium for the insurance was evidenced by notes, "one for $50, *due on delivery of the policy* and the other for $28.08, due on January 15, 1917." The complaint avers the death of the insured to have occurred on January 6, 1917. When the replication is referred to and considered with the complaint as a statement by plaintiff of the executed contract on his part and of his accrued right of recovery thereon, the note maturing after insured's death (according to the agreement of parties to the application and binding receipt) is treated as a cash payment accompanying the application for insurance. Not so of the note for $50; that became due only on delivery of the policy. The time of delivery of the policy, stipulated in the application for insurance, was dependent on the concurring conditions precedent to a completed contract of insurance: Full payment of the first premium, embraced in the two notes; and the delivery to and receipt by the applicant (here the insured) during her lifetime and in good health of the policy of insurance. The contract stipulation of the application for payment of premiums and delivery to, and receipt by, the applicant of the policy during her life and good health is averred in the replications to have been waived by the authorized agreement of defendant, in giving the binding receipt, in that the delivery to insured of the policy was not conditioned on her continued "good health." If so modified there are still the two conditions precedent to the "contract of insurance": (1) Payment of first premium on the contract of insurance by the applicant or insured; and (2) the delivery of the contract of insurance to the insured "during her lifetime," and after approval of the completed application by the company's medical director. Powell v. Prudential Ins. Co., supra. It must result that the note for $50 became due and payable only when the policy was delivered, or when in law the policy is held subject only to the act of delivery to the insured (she being in life) under the "contract to insure," on the approval of the application by the company's medical director, though she may experience or be subject to subsequent (following the application and the initial medical examination made a part of the same) changed and enfeebled condition of health.

[10] The averment of the replications that all premium notes were "paid when due" and the policy was delivered to plaintiff, when tested, as it must be, by its weakest averment (Nat. Park Bank v. L. & N. R. R. Co., 74 South. 69 [10]), is not the equivalent of the necessary averment that all premiums were paid when due, and the policy was thereafter delivered to and received by the insured, the applicant for insurance, while she was in life. Nor are the allegations of replications 2 and 3 that said completed application for insurance was approved by defendant's medical director on January 4, 1917, "prior to the death of said Bertha M. Brannum," full answer to pleas averring the policy of insurance was never delivered to the insured while in life. These replications were subject to demurrer.

[11] The additional averment in replications 4 and 5 sought to set up an estoppel that defendant did not, prior to the death of the said Bertha M. Brannum or prior to the delivery of the policy, notify plaintiff or said Bertha M. Brannum that the receipt was not further binding on the defendant. This averment does not relieve said replications from the ground of demurrer to which replications 2 and 3 were subject. Testing the replications by their weakest averment, it is shown on their face that the first premium was not paid as required in the application for insurance, as to the $50 note; and it is not apparent therein that full settlement was made as provided in the contract of the parties, evidenced by the application and the binding receipt in question. Norris v. New Eng., etc., Co., supra; Satterfield v. Fidelity, etc., Ins. Co., supra. The parties to the contract knew its contents, were chargeable with the legal effect thereof; and defendant was under no obligation to advise plaintiff or the said Bertha M. Brannum as to the legal effect of the binding receipt in question, as it had reference to or was a modification of the application for insurance and on which the policy was to issue. Moreover, the replications were departures from the complaint.

For the error of the trial court in overruling demurrer to replications 2 to 5, inclusive, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

[10] 199 Ala. 192.